lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VERLE M. VALLIER,                                    )
                                                     )
                        Plaintiff,                   )
                                                     )
            vs.                                      )            Case No. 08-2267-JAR
                                                     )
AMERICAN FIDELITY ASSURANCE                          )
COMPANY,                                             )
                                                     )
                        Defendant.                   )
_____)

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on plaintiff Verle Vallier's Emergency Motion to Enjoin

State Court Proceedings in Aid of the Court's Jurisdiction and Request for Oral Argument (Doc.

12). A hearing was held on September 9, 2008. Defendant has also filed a Motion to Stay Case

Pending Class Action Settlement (Doc. 10). After hearing argument from counsel,[1] the Court

took the matter under advisement. For the reasons explained in detail below, plaintiff's request

for injunctive relief is denied.

## I.     Procedural and Factual Background

On June 17, 2008, plaintiff filed this putative class action seeking damages from

American Fidelity Assurance Company ("AFA") based on allegations that AFA changed its

interpretation of the "actual charges" policy language in its limited benefit specified disease

_____

[1]The Court granted the motion by the Plaintiffs' Steering Committee in the Louisiana state court action to
enter a limited appearance at the hearing and gave the Committee permission to file a brief opposing plaintiff's
request for relief (Doc. 30).

cancer expense policies.  Plaintiff alleges claims for breach of contract, breach of contract with

fraudulent intent, fraud and bad faith; there is no claim for declaratory relief.  He seeks to assert

these claims on a class action basis and seeks to certify a class composed of the following:

> All policyholders, estates, covered persons and/or beneficiaries who:
>
> (a) were insured under a limited benefit specified disease
> cancer expense policy owned, sold, issued, underwritten
> and/or administered by AFA and denominated either form
> [sic] nos. C-3, C-4, C-489, C-5, C-6, C-7 or C-8;
>
> (b) made a claim for policy benefits payable in the amount of
> the "actual charges" of covered healthcare goods, services
> and/or treatments which AFA ultimately adjusted and
> approved; and
>
> (c) received payment from AFA on said claim in an amount
> less than the "actual charges" of the covered healthcare
> goods, services and/or treatments.

On July 10, 2008, a Louisiana state court entered an "Order of Preliminary Approval of

Class Settlement" in the case of *Guidry, et al. v. American Public Life Insurance Co., et al.*[2]  The

Order encompasses the same claims as this case.  Members of the class are to receive notice of

the class settlement and must request any exclusion from the class by September 18, 2008.  A

fairness hearing regarding the class settlement is set for September 25, 2008.  The Order also

contains a provision enjoining class members from prosecuting the claims at issue.  Highly

summarized, the settlement provides for both monetary and declaratory relief—defendants will

pay $17.25 million into an escrow account for distribution to the class and the parties will agree

to a definition of "actual charges" as used in the cancer expense policies.[3]

---

[2]Case No. 2008-3465 (14th Judicial Dist., Parish of Calcasieu, La. July 10, 2008) (hereinafter "*Guidry*").

[3](Doc. 13, Ex. K.)

On August 15, 2008, defendant moved to stay this action pending the state class action settlement, arguing that once the settlement has been approved by the Louisiana state court, it will preclude the class action claims that plaintiff is asserting in this case.

On August 21, 2008, plaintiff countered with an Emergency Motion to Enjoin State Court Proceedings in Aid of the Court's Jurisdiction (Doc. 12).  Plaintiff moves this Court to exercise its inherent and statutory power under the All Writs Act,[4] and discharge its constitutional obligation to preliminarily enjoin AFA from participating in newly instituted, collusive, "settlement-only" class action proceedings pending in *Guidry* as the Court deems necessary to preserve and protect the specific federal jurisdiction that Congress intended this federal district Court to exercise over this multi-state class action by enacting the Class Action Fairness Act of 2005 ("CAFA").[5]

At the hearing, plaintiff advised the Court that one month after he initiated this multi-state class action against AFA pursuant to CAFA, AFA and its sister-company, American Public Life Assurance Company ("APL") have through a "reverse auction" process, manufactured the identical, overlapping and plainly collusive state settlement in *Guidry* and caused the same to be subsequently filed in a hand-picked state forum located in rural, southern Louisiana.  Plaintiff argued that injunctive relief enjoining AFA from participating in the settlement of the Louisiana action is necessary in order to "protect" this Court's "CAFA jurisdiction."  According to plaintiff, Congress enacted CAFA to provide a single, federal forum to adjudicate multi-state class actions and to ensure that the settlements of such classes are fair to the members of the

---

[4]28 U.S.C. § 1651(a).

[5]Citing 28 U.S.C. § 1332(d), 1453, 1711 through 1715.

proposed class.  Plaintiff further argued that the filing and settlement of the Louisiana action

evidences that AFA and others have purposefully conspired to deprive the federal courts of their

jurisdiction and oversight over this multi-state class action.  Plaintiff went so far as to accuse

defendant of trying to "snooker" this Court out of jurisdiction and represented to the Court that

he had spoken with one of the named plaintiffs in *Guidry*, who professed to know nothing about

the case.   Plaintiff also argued that the proposed settlement in *Guidry* is unfair and "plainly

unconstitutional."  Counsel for plaintiff stated that he believed plaintiff had already opted out "as

a matter of law" by virtue of filing the instant action, and expressed his concern that by opting

out of the settlement, plaintiff would be precluded from objecting to the declaratory portion of

the settlement at the fairness hearing.[6]

      AFA countered that the settlement was the result of extended settlement negotiations

between class counsel for the *Guidry* plaintiffs and various defendants' counsel, including

counsel for AFA.  These settlement negotiations commenced in March of 2008 and involved

many hours and tens of thousands of dollars in an effort to reach a settlement that they believe is

fair.  Defendant points out that a Special Master was appointed to serve as mediator for the two-

day long mediation sessions.

      AFA rejected the notion that the proposed settlement terms are in any way unfair, and

again noted that the agreement was reached after protracted, arms-length negotiations with

counsel for the *Guidry* plaintiffs.  AFA argued that, to the extent plaintiff believes the settlement

terms are unfair or inequitable, the appropriate forum for raising said concerns is before the

---

[6]Plaintiff also alleged that AFA snookered the United States District Court in Louisiana, where the *Guidry* plaintiffs originally filed their class action.  The issue of whether AFA interfered with that court's jurisdiction is not before this Court and is not relevant to its determination as to whether AFA has interfered with this Court's jurisdiction.

Louisiana state court.  AFA argued that during the fairness hearing scheduled for September 25, 2008, plaintiff and any other members of the settlement class will have an opportunity to voice any concerns they have regarding the settlement terms.  Given plaintiff's opportunity to present his objections to the proposed settlement before the Louisiana court, defendant argued that this Court should not allow the plaintiff to use a request for injunctive relief as a means to collaterally attack the settlement of the Louisiana action.

Counsel for the *Guidry* Plaintiffs' Steering Committee attempted to address some of plaintiff's arguments as well as the Court's concerns.  Counsel assured the Court that in the event plaintiff chose to opt-out of the monetary portion of the settlement, he would still be able to appear at the fairness hearing and object to the prospective declaratory portion of the settlement relating to terms of the insurance policy.  Counsel for the Steering Committee also represented to the Court that the settlement negotiations predated this action and were conducted at arms-length by a Special Master.  Counsel took exception to plaintiff's claims of fraud and collusion.

## II.    Discussion

Plaintiff asks this Court to enjoin the state court proceedings, citing the Court's power to protect its jurisdiction and CAFA.  As a threshold matter, the Court agrees with defendant that plaintiff makes the erroneous assumption that in passing CAFA Congress was (1) reserving to the federal courts exclusive jurisdiction over all "multi-state" class action claims and (2) imposing mandatory procedures governing the resolution of all "multistate" claims.  First, CAFA does not mandate that class actions of any variety—"multi-state" or otherwise—be filed in

federal court.[7]  Instead, CAFA simply expands the scope of a federal court's original jurisdiction over class actions by easing the jurisdictional burden of filing a class action in federal court or in removing a class action filed in state court.  Second, because CAFA's restrictions on settlements only apply to class action cases pending in federal court, plaintiff's suggestion that CAFA somehow imposes "congressionally mandated oversight and protection" is also without merit.[8]  As conceded by plaintiff at the hearing, CAFA in no way prevents plaintiffs or defendants from electing to pursue and resolve class actions in state court pursuant to the procedures set forth by the forum state rather than in federal court pursuant to the procedures set forth in accordance with CAFA.

The All Writs Act provides that "[t]he Supreme Court and all courts established by act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[9]  A federal court's authority under the All Writs Act is limited by the Anti-Injunction Act, which prohibits injunctions "to stay proceedings in a state court except as expressly authorized by act of Congress or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[10]  By its terms the Anti-Injunction Act prevents a federal court from entering an injunction enjoining state court proceedings unless the grounds for the injunction falls within one of three narrowly crafted exceptions set forth in the statute.  Plaintiff invokes the aid of jurisdiction exception.

---

[7]*See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States.").

[8]*See* 28 U.S.C. § 1711(2).

[9]*Id*. at § 1651.

[10]*Id*. at § 2283.

"The settled law . . . establishes that the 'aid of jurisdiction' exception . . . includes consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation."[11]  The All Writs Act "is generally used to prohibit activities in another court that threaten to undermine the pending settlement in the enjoining court."[12]  The Third Circuit has explained,

> Complex cases in the later stages—where, for instance, settlement negotiations are underway—embody an enormous amount of time and expenditure of resources.  It is in the nature of complex litigation that the parties often seek complicated, comprehensive settlements to resolve as many claims as possible in one proceeding.  These cases are especially vulnerable to parallel state actions that may frustrate the district court's efforts to craft a settlement in the multi-district litigation before it, thereby destroying the ability to achieve the benefits of consolidation.  In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.[13]

The Third Circuit recently reaffirmed that "it may not be sufficient that state actions risk some measure of inconvenience or duplicative litigation . . .  an injunction under the All Writs Act is appropriate only when the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation."[14]  In other words, "the state action must not simply threaten to reach judgment first, it must interfere with the federal court's own path to

---

[11]*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 232 F. App'x 161, 166 (3d Cir. 2007) (citations omitted).

[12]*Grider v. Keystone Health Plan Ctr., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007).

[13]*In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002).

[14]*Grider*, 500 F.3d at 329 (citations omitted).

7

judgment."[15]

Under this standard, this Court does not have jurisdiction to enjoin the parallel state court action in Louisiana. No settlement is "directly in prospect" or even in the negotiation stage in this case and thus, it cannot be said that a settlement was being "circumvented or co-opted."[16] Indeed, the case before this Court is in its very preliminary stages—discovery is not complete and no conditional class certification is extant. The mere fact that the actions of the Louisiana state court might have some effect on these federal proceedings does not justify interference. Thus, this Court has no interest that can be vindicated by the exercise of the federal injunction power.[17]

Counsel for plaintiff further alleged that the proposed settlement was a so-called "reverse auction," but was only able to offer speculation instead of facts to support his allegation of collusion. Indeed, counsel requested leave to conduct discovery in order to find such facts, if they exist. Plaintiff's claims are further belied by representations by counsel for the Plaintiff's Steering Committee that the settlement negotiations in *Guidry* commenced in March of 2008, three months before this action was filed, and were mediated by a Special Master. A reverse auction occurs when "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak

---

[15]*Id.* at 329-30 (citations omitted); *accord Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1098-99 (9th Cir. 2008).

[16]*Negrete*, 523 F.3d at 1099.

[17]*Cf. In re Linerboard Antitrust Litg.*, Case Nos. 98-5055 and 99-1341, MDL No. 1261, 2008 WL 2758442, at *8-9 (E.D. Pa. July 15, 2008) (finding jurisdiction to enter an All Writs injunction where a multi-district class action settlement had been approved and counsel had been awarded 30% of the total settlement).

settlement that will preclude other claims against the defendant."[18]  There is no evidence of such activity in this case.  Even if plaintiff's argument of collusion were accepted, however, cases addressing this argument have expressed doubt as to its relevance as justification for an All Writs injunction.  As the Ninth Circuit noted, the "reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction."[19]  In any event, plaintiff is not precluded from raising allegations of collusion at the fairness hearing.

Moreover, although plaintiff contends that Fed. R. Civ. P. 65 is not implicated in his request, an injunction under the All Writs Act, like any other injunction, should not be issued if adequate remedies at law are available.[20]  According to the Third Circuit, "[u]nder this standard, the general rule is that 'if a party will have an opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law.'"[21]  Because the plaintiffs had an opportunity to assert objections to the proposed settlement, the Court in *Grider* suggested that an adequate remedy at law existed "that would militate against injunctive relief under the All Writs Act."[22]  In this case, plaintiff has an adequate remedy at law for the wrongs he alleges in the form of monetary damages.

---

[18]*Negrete*, 523 F.3d at 1099 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)).

[19]*Id*. at 1099-1100 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002) (internal quotation marks omitted)).  The *Negrete* court declined to decide whether this argument could be raised in actions where the Anti-Injunction Act was implicated.  *Id*. at 1103 n.17.

[20]*Grider v. Keystone Health Plan Ctr., Inc.*, 500 F.3d 322, 332 3d Cir. 2007).

[21]*Id*.

[22]*Id*.

Specifically, plaintiff has filed suit against AFA alleging multiple causes of action, all arising out of a contract of insurance.  If plaintiff chooses to opt-out of the monetary portion of the Louisiana settlement, he may continue with this action for breach of contract and fraud pending before this Court, albeit on an individual basis.  As stated at the hearing, plaintiff did not bring a claim for declaratory relief in his action before this Court.  Pursuant to the representations by counsel for the Plaintiffs' Steering Committee, by opting out, plaintiff does not forego his right to appear at the fairness hearing and object to the declaratory portion of the *Guidry* settlement, which plaintiff claims re-writes his insurance policy in violation of his constitutional rights.

Nor do any of the other factors under Rule 65 weigh in plaintiff's favor.[23]  If the Court were to grant plaintiff's requested injunctive relief, AFA, as well as the other parties to the settlement in *Guidry* would be severely prejudiced in that the Court would be effectively derailing a settlement negotiated and noticed at great expense to the parties.  And, permitting plaintiff to disrupt the settlement in Louisiana by seeking injunctive relief in an ancillary proceeding—based on unsupported allegations of collusion among the parties and counsel in the *Guidry* action—would have the untoward effect of making future class action settlements more difficult to achieve.  Granting the injunctive relief sought by plaintiff based on his bare "reverse auction" allegations is contrary to the public interest.

Finally, as AFA points out, this is not the first time a plaintiff's counsel has attempted to

---

[23]The moving party must establish the following elements to obtain injunctive relief: (1) a substantial likelihood of success on the merits; (2) a showing of irreparable injury unless the injunction issues;  (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and  (4) a showing that the injunction, if issued, would not be adverse to the public interest.  *See, e.g., Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

derail the Louisiana settlement.  In *Butler v. American Fidelity Assurance Co.*,[24] a plaintiff in a federal class action pending in the Southern District of Mississippi made similar allegations of collusion against the Plaintiff's Steering Committee while seeking to enjoin the *Guidry* class action settlement.  In that case, on August 27, 2008, the district court denied the same relief sought by plaintiff in this case, ruling that the aid in jurisdiction exception to the Anti-Injunction Act did not apply merely because a concurrent state proceeding might result in a judgment inconsistent with the federal court's decision,[25] and noting that such an injunction should not issue merely because another court threatens to reach judgment before the district court does.[26] Plaintiff attempted to enjoin the parties to the Louisiana case rather than attempting to enjoin the Louisiana court, which the district court rejected as an attempt to evade section 2283 of the Anti-Injunction Act.[27]  In its order memorializing its oral ruling, the court further found that there was no evidence of collusion and that the motion was not well-taken.  This Court agrees with the reasoning of Judge Barbour as further support for its ruling that plaintiff is not entitled to injunctive relief in this case.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff Verne Vallier's Emergency Motion to Enjoin State Court Proceedings in Aid of the Court's Jurisdiction (Doc. 12) is DENIED; the Court will defer ruling on defendant's Motion to Stay (Doc. 10) until plaintiff has notified the Court that he has in fact opted out of the *Guidry* class action settlement.

[24]Case No. 08-CV-0260-WHB-LRA (S.D. Miss. Aug. 27, 2008).

[25]*Butler*, Tr. of Aug. 27, 2008 hearing at 50 (citing *Texas v. United States*, 837 F.2d 184, 186 n.4 (5th Cir. 1988)).

[26]*Id.*

[27]*Id.* at 52 (citing *Atlantic Coastline R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)).

**IT IS SO ORDERED.**

Dated this 16th day of September 2008.

 S/  Julie A.Robinson          

Julie A. Robinson
United States District Judge